Keating, J.
Defendant (28 years old) consented to help his brother-in-law and another, both 16 years old, organize a beer party. Several youths contributed about $2 each and defendant purchased a half keg of beer. On the evening of July 19, 1963, defendant transported the beer and some of the boys to a picnic area where the keg was tapped and the party began. An hour later it began to rain and the party was moved to defendant’s house. Of the nine boys participating, two were 14, two were 15, and five were 16. The boys ate potato chips, drank beer, played records and wandered back and forth to a nearby carnival. The last group of boys left between 11:00 p.m. and midnight, and, shortly thereafter, one of them, 14-year-old Thomas Higgins, was killed on the highway one-half to one mile from defendant’s home, presumably having been struck by an automobile.
Defendant was indicted for one count of violation of subdivision 1 of section 483 of the Penal Law in connection with Thomas Higgins and three counts of violation of subdivision 2 of section 483 of the Penal Law in connection with Michael Connor (15 years old), Richard Rohrer (15 years old) and Joseph Manti (14 years old).
The testimony indicated that some of the boys, including Higgins, were staggering, that Connor slept the entire night in a car and that Manti was sick and throwing up. The jury acquitted defendant of the counts concerning Higgins, Rohrer and Manti but convicted him of count two involving Connor.
Though previous prosecutions under section 483 have dealt almost exclusively with sexual offenses or morals cases, it is evident from an examination of the statute that it is intended to be broader in scope. The intent is to protect the physical health, morals and well-being of children, and this solicitude relates not only to sexual offenses but to other dangers as well.
Moreover, the fact that defendant was not indicted under subdivision 3 of section 484, which makes it a misdemeanor to sell, give away or procure to.be sold or given away alcoholic beverages to children under the age of 18, is of no consequence. There are many occasions where the same act constitutes different crimes and is punishable in different ways, and the State may proceed under a general statute even though a more specific one is available. (People v. Florio, 301 N. Y. 46, 52; People v. Hines, 284 N. Y. 93, 105.)
*402 On this appeal, defendant contends that the indictment should have been dismissed because the Grand Jury was prejudiced by the introduction of irrelevant evidence regarding Higgins’ death and that the' introduction at trial of the Sanie evidence denied him a fair trial-.- He argues that, since the bill of particulars did not set forth what acts or eondútít of defendant were claimed to have caused Higgins’ death, nor was there any proof on the trial as to the circumstances of his death, the evidence relating to the death was immaterial, irrelevant and highly prejudicial.- Defendant demurred to the indictment and, although this is a procedure unrelated to a motion to inspect the Grand Jury minutes, the trial court, “ in an attempt to cut through to the merits of matters,” treated the demurrer also as a motion to inspect.- It was denied.
It is well-settled that- an indictment is presumed td be" based on legal and sufficient evidence (People v. Howell, 3 N Y 2d 672; People v. Glen, 173 N. Y. 395). The trial court read the Grand Jury minutes and found nothing to indicate that the evidence adduced violated defendant’s rights.
Defendant argued on his demurrer that all reference to the fact that Higgins was killed should have been stricken from the first count of the bill of particulars as prejudicial, scandalous and inflammatory; That first count- charged that defendant ‘ ‘ did wrongfully, * * * willfully, and knowingly * * * cause or permit the life and limb of a child, one Thomas Higgins * * * to be endangered and his health to be injured”.- It went on to recite that Higgins was permitted to leave defendant’s house late at night unattended by an adult and in ah intoxicated condition as a result of defendant’s acts, and that while so intoxicated he was struck by a motor vehicle and killed. The other three counts charged that defendant caused or permitted each of the three other boys “ to be placed in Such a situation and to engage in such an occupation that his life or limb was endangered or his health likely to be injured or his morals likely to be impaired
In such an indictment, mention of Higgins’ death could hardly be incompetent and immaterial, ahd, therefore, illegal when presented to a Grand Jury. In order to obtain an indictment or conviction under1 the first count, the People had to allege and prove that Higgins’ life, limb or health did in faot become *403 endangered, as distinguished from the fact that such eventualities only need likely to have transpired under the other three counts. This distinction represents the chief difference between •subdivision 1 and subdivision 2 of section 483. Thus in order to show the actual danger to which Higgins was exposed, it was relevant to show his death. The trial court’s conclusion that none of the evidence was illegal is clearly supported by the record, as well as fortified by the presumption that an indictment is found upon legal evidence. (See People v. Sexton, 187 N. Y. 495.)
Defendant’s argument regarding the evidence adduced at trial is similar to that regarding the references in the bill of particulars and the evidence before the Grand Jury. Again, since defendant was on trial for endangering the life and limb and injuring the health of Thomas Higgins, the fact of Higgins’ death would seem to be highly relevant. The evidence presented was clearly material to the issue whether defendant’s conduct caused or permitted the life or limb of the deceased child actually to become endangered (People v. Hopkins, 208 App. Div. 438; People v. Onody, 296 N. Y. 305).
Defendant’s final contention is that section 483 is so vague and indefinite as to violate the due process clause of the Fourteenth Amendment. He particularly attacks the use of the word “ permits ”, contending that this word presupposes some degree of control over the child and the failure to specify what degree of relationship or control is presupposed makes the section too indefinite. This argument is not persuasive. It is clear that defendant exercised sufficient control in this case to comply with and be subject to the statute—fin fact, he had complete control over the youths and the party in his decision to purchase or not to purchase the beer.
The test to be applied was recently stated by this court: ‘ ‘ The test is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him. Such warning must be unequivocal but this requirement does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.” (People v. Byron, 17 N Y 2d 64, 67.) This statute clearly informed defendant that the offense prohibited was the endangering of the life, limb, health or *404 morals of a child and what was required of him was that he refrain from willfully causing or permitting such danger. We, therefore, find the statute to be constitutional.
The judgment of the Appellate Division is affirmed.
•Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke,Scileppi and Bergan concur.
Judgment affirmed.