OPINION OF THE COURT

Per Curiam.

Judgment of conviction rendered June 5,1980 affirmed.
The information in this case charges the defendant, a medical doctor, with striking the complainant, the Mayor of the City of New York, in the right eye. Defendant struck the complainant with his right hand, in which hand he held an egg. The incident took place at about 10:30 a.m. on November 5,1979 at the Hilton Hotel where the complainant was welcoming delegates to a convention of about 3,000 medical professionals, members of the American Public Health Assembly. As he was about to speak to the *249 assembly, a disturbance broke out to his left. Some 10 or 12 demonstrators, waving protest banners and yelling, prevented him from starting his speech. He testified that he was “grabbed from the back, struck on the face, grabbed around the neck, struck in the right eye ***. I could feel eggs *** running down my face”. The complainant identified the defendant as the one who had struck him. Taking the stand in his own defense, the defendant denied that he ever hit the complainant.
The defendant has not, on this appeal, challenged his conviction for disorderly conduct or harassment. He attacks solely the conviction for assault, third degree, perpetrated in a reckless manner (Penal Law, § 120.00, subd 2).
Subdivision 2 of section 120.00 of the Penal Law provides:
“A person is guilty of assault in the third degree when:
* * *
“2. He recklessly causes physical injury to another person”.
Physical injury is defined in subdivision 9 of section 10.00 of the Penal Law as follows: “ ‘ Physical injury’ means impairment of physical condition or substantial pain.”
The defendant contends that there has been no showing of either of the effects that constitute physical injury, viz., substantial pain or impairment of physical condition. We note that both results need not be shown to sustain a conviction; either will suffice (People v McDowell, 28 NY2d 373, 375).
The complainant testified that when struck, he felt a sharp pain in the eye. The discomfort, the residual pain lasted “for the balance of the day”. The sharp pain or the consciousness of the sharp pain lingered for “perhaps a half hour”. He did address the assembly but during his entire 10 minute speech, he indicated he felt pain in his right eye.
Furthermore, in addition to lingering pain, the complainant stated that his vision was blurred. About an hour after the incident, the complainant went to St. Vincent’s Hospital where he was examined both by his physician and an ophthalmologist.
*250 The complainant’s physician testified that the complainant was suffering from traumatic conjunctival damage. The report of the examining ophthalmologist indicates that there were multiple abrasions of the lid of the right eye as well as “superficial puncture type wounds over the cornea”. The cornea is the “clear part of the eye through which vision takes place”.
Even the cases cited by appellant do not sustain the contention that “physical injury” was not established in this case. In People v McDowell (supra, p 375), the court noted that “[w]hile the Penal Law (§ 120.05, subd. 3) [a felony but one requiring the same quantum of physical injury as section 120.00 of the Penal Law for conviction] requires no particular degree of physical impairment or substantial pain under the definition of physical injury in the Penal Law to sustain a conviction (§ 10.00, subd. 9), there must be evidence establishing the one or the other.” However, the People’s burden was not there met where the only evidence adduced was that there had been a “blackened eye” and nothing further, such as its seriousness, any swelling or even “suggestion of pain”. As noted here, there was sharp and persistent pain, blurred vision, medication, a diagnosis of punctured cornea, etc.
In Matter of Philip A. (49 NY2d 198), dealing only with the question of substantial pain, the court noted that generally this was a question for the trier of the facts. Further, although pain is a subjective matter, there must be more than a showing of petty slaps, shoves and kicks. In that case, where a fight between juveniles was at issue, the court found that evidence that the complainant was hit in the face and cried was not enough to spell out substantial pain and was consistent with mere petty slaps that do not qualify as adequate for conviction (Cooke, Ch. J., in dissent [p 202], noted that “Knowledge of the circumstances and the description of the sensation accompanying the use of force, however, provide a ready basis for measuring, within one’s own experience, the degree of pain felt by another.”) The trial court in the case at bar, in its charge, adopted the very language of Matter of Philip A. (supra), so the jury understood both the subjective nature of pain and still the need for an objective minimum to satisfy the *251 statutory requisites for conviction. In People v Morales (75 AD2d 745, 746), mere slaps were again held inadequate to support a claim of physical injury, the court noting: “No hospital or medical records were produced to substantiate her claim”. Again, in this case the proof for impairment, as that definition was cogently stated by the court, was evidenced not only by the victim’s testimony of blurred vision but by medical testimony and hospital records establishing specific traumatic aberrations of the eye (cf. Matter of Derrick M., 63 AD2d 932).
The jury heard the diametrically opposed versions of the incident from a number of witnesses and from the defendant. The charge on the law of assault, third degree, was clearly in accord with the court decisions. The jury believed the victim and the People’s witnesses and disbelieved the defendant and there is no basis for disturbing that result (People v Scalise, 55 AD2d 992).
The defendant attacks section 120.00 of the Penal Law as constitutionally vague. It may preliminarily be noted that a statute similar to assault, third degree, viz., section 120.20 of the Penal Law, reckless endangerment in the second degree — “A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person” — has been held to be constitutional (People v Lucchetti, 33 AD2d 566).
A statute is unconstitutional for vagueness if it forbids or requires “the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application” (Connally v General Constr. Co., 269 US 385, 391; People v Dominick, 68 Misc 2d 425). The Court of Appeals defines a statute as vague and violative of due process when it fails “to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden”. The language used must convey “sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices” (People v Illardo, 48 NY2d 408, 413, 414; see, also,People v Byron, 17 NY2d 64, 67; People v Cruz, 48 NY2d 419, 428; United States v Harriss, 347 US 612, 617; Rose v Locke, 423 US 48).
*252 The acts forbidden in subdivisions 1 and 2 of section 120.00 of the Penal Law are within the common understanding of ordinary men and women; the warning is clear, you strike your neighbor at your peril. If he falls and is killed, you may be guilty of a form of homicide. If he is seriously injured, you may be guilty of a felony. If he is less seriously injured, the law prescribes a lesser punishment. In the instant case the defendant certainly was aware that his conduct was proscribed by law; he did not have to guess as to whether or not the statute applied to him; he acted in “reckless disregard of its prohibition” (Screws v United States, 325 US 91, 104).
The defendant argues that the presence of excessive security precautions deprived him of the presumption of innocence, led the jurors to believe that he was an individual of dangerous propensities and influenced the verdict against him.
It has been stated that “[t]he presence of armed guards in a courtroom is generally a matter in the sound discretion of the trial court, but an abuse of this discretion ‘might well reach a point where the trial is a farce and a fair trial impossible’” (McCloskey v Boslow, 349 F2d 119, 121; see, also, United States v Jackson, 549 F2d 517, 526, cert den sub nom. Muhammad v United States, 430 US 985). Where, however, special circumstances require added security precautions, it is within the discretion of the Trial Judge to adopt such precautions (Kennedy v Cardwell, 487 F2d 101, 108). In this case, added precautions were obviously required but the court conferred with the defense to minimize or negate any adverse inferences and specifically told the jurors that additional security forces were always on hand when the Mayor or any other public official testifies in court. Added security arrangements were indicated in this case. There had been a previous mistrial when a demonstration of about 30 people disrupted court proceedings. There is nothing in the record to indicate that the presence of security personnel prevented a fair trial.
Lastly we find no merit to defendant’s argument that the conviction should be reversed in the interest of justice.
*253 The case is remitted to the Criminal Court of the City of New York, New York County, for proceedings to direct defendant to surrender himself to said court in order that the execution of the judgment be commenced (CPL 460.50, subd 5).
Concur: Hughes, J. P., Tierney and Riccobono, JJ.